UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:19-cv-10537-JLS-KES                    Date: June 21, 2022
Title: Andre Wong v. American Honda Motor Co., Inc. et al

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

      D. Rojas                                                N/A
    Deputy Clerk                                          Court Reporter

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:
    Not Present                                            Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER GRANTING DEFENDANTS'
                 MOTION TO DISMISS (Doc. 47)**

        Before the Court is Defendant's Motion to Dismiss.  (Mot., Doc. 47; Mem., Doc. 47-1.)  Plaintiffs opposed and Defendant replied.  (Opp., Doc. 49; Reply, Doc. 61.) Having considered the pleadings, the parties' briefs, oral argument, and for the reasons stated below, the Court GRANTS the Motion.

## I.      BACKGROUND

        The present class action complaint was filed against Defendant American Honda Motor Co. ("Honda") by twenty-one named Plaintiffs from fourteen different states.  (*See* Corrected First Amended Consolidated Class Action Complaint ("FAC"), Doc. 44, ¶¶ 1, 32-263.)  The FAC "seeks damages against Honda for breach of the manufacturer's warranty and for unfair or deceptive acts or practices pertaining to Honda's design and manufacture of Model Years 2016-2020 Honda Civic (2- and 4- Door), Model Years 2017-2021 Honda Civic (5- Door, *i.e.*, Hatchbacks), and Model Years 2017-2021 Civic Type R vehicles designed, manufactured, distributed, warranted and sold/leased by Honda, and equipped with uniformly defective AC Systems ('AC System')."  (*Id.* ¶ 1.) Plaintiffs allege that "the AC System in all Class Vehicles is substantially the same, from a mechanical engineering and design standpoint, in that the AC Systems in all Class

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                             Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

Vehicles are composed of and employ identical components to deliver cooled air to the passenger cabin."  (*Id.* ¶ 3.)  They allege that the AC Systems are defective because the systems "crack and leak refrigerant," "lose pressure within the AC System," and "fail to cool Class Vehicle passenger cabins."  (*Id.* ¶ 4.)  The 273-page FAC asserts 52 claims based on federal law, California law, and the laws of all 50 states and the District of Columbia.

### A.    The Defect

The FAC outlines the alleged defect in the Class Vehicles' AC Systems.  Plaintiffs claim that "due to a defect in design, and/or the materials from and the manner in which Honda manufactures them and their constituent components, Class Vehicle AC Systems cannot perform as warranted and expected in ordinary and foreseeable driving conditions (the 'Defect')."  (*Id.* ¶ 266.)  The FAC specifies that the AC System common to Class Vehicles "is not sufficiently strong and durable, and is prone to fail during ordinary use and operation and well in advance of its expected useful life."  (*Id.* ¶ 280.)  "This insufficiency leads to AC System parts cracking, which allows refrigerant to leak out of the AC System and causes it to lose pressure, which inhibits its ability to produce cool air as advertised and expected."  (*Id.*)  "Because of the Defect, AC System failure in the Class Vehicles occurs at relatively low mileages, often just outside the warranty period, suddenly and without warning," and the "Defect impacts nearly every AC System component."  (*Id.* ¶ 282.)  The FAC cites an authorized Honda technician's perspective that "the Defect seemed to impact all three major System components: the condenser, compressor and evaporator."  (*Id.* ¶ 283.)  Further, "[a] leak in either of the AC System's three critical components, or the various hoses and lines that connect them, not only will cause the AC System to hemorrhage refrigerant, rendering the AC System inoperable, they also can cause other AC System components to fail."  (*Id.* ¶ 285.)  Moreover, the FAC alleges that "[b]ecause the Defect is *systemic*, when Honda replaces individual failed AC System components with equally defective parts, the Class Vehicles will often manifest the Defect again following initial repairs."  (*Id.* ¶ 287.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                    Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

The FAC also outlines the risks posed by the Defect.  Plaintiffs allege that the "Defect not only results in a loss of vehicle comfort, it also impacts the health and safety of drivers and passengers."  (*Id.* ¶ 293.)  The FAC explains that "the Defect causes uncomfortably hot temperatures" inside Class Vehicles, "often to the extent that such temperatures become unsafe for further driving," particularly for "the young and elderly." (*Id.* ¶¶ 294, 297.)  Further, "when the vehicle's windshield accumulates moisture, the Defect prevents Plaintiffs and Class members from defogging their windshields using the AC System, decreasing visibility and increasing the risk of accident."  (*Id.* at ¶ 295.) Additionally, the FAC suggests that should the Class Vehicles begin to hemorrhage refrigerant during vehicle operation, the compressor might seize and the vehicle may stall, significantly increasing the risk of an accident.  (*Id.* ¶ 298.)

B.     **Warranty Policy and Practices**

Honda issued a New Vehicle Limited Warranty ("NVLW") with each Class Vehicle.  (*Id.* ¶ 303.)  Under the NVLW, "Honda agreed to repair reported defects within the earlier of 3 years or 36,000 miles."  (*Id.* ¶ 304.)  Typical of each warranty issued, the 2016 Honda Civic warranty provides that "Honda will repair or replace any part that is defective in material or workmanship under normal use. [. . .] All repairs/replacements made under this warranty are free of charge.  The replaced or repaired parts are covered only until this [NVLW] expires."  (*Id.*)  Honda also "provided Class members who purchased Certified Pre-Owned Class Vehicles a 1-year/12,000 mile bumper-to-bumper Limited Warranty."  (*Id.* ¶ 305.)  Honda instructs vehicle owners and lessees to bring their vehicles to a Honda-certified dealership for warranty repairs.  (*Id.* ¶ 309.)

The FAC alleges, however, that the "majority" of Class Vehicles "manifest the Defect only after any applicable base warranties have expired—often *just* outside the warranty period—forcing Plaintiffs and Class members to pay between $150 and $2,000 out of pocket."  (*Id.* ¶ 310.)  And "[e]ven where Class members tender their Class Vehicles for repair within the warranty period, Honda often evades its warranty obligations."  (*Id.* ¶ 311.)  First, "because Honda effects repairs using equally defective

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:19-cv-10537-JLS-KES                    Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

replacement parts, Honda's in-warranty 'fixes' remedy the Defect only temporarily," and thus while Class Members may receive repairs while their vehicle is under warranty, they later discover that either the same components or different ones have failed once they will be responsible for the cost of repairs.  (*Id.* ¶ 312.)  Second, Honda has a record of requiring Class Members to pay a diagnostic fee ranging from $100 to $415 only for authorized dealers to then claim that the damage resulted from "road debris" as opposed to the Defect such that repairs are not covered by warranty.  (*Id.* ¶ 313.)  And third, the FAC alleges that Class Members contend that Honda impedes warranty coverage by conducting a diagnostic inspection only to report that the AC System is operational, or the failure cannot be replicated, or by simply refilling the AC System with refrigerant; this in turn requires Class Members to replace their AC Systems at their own expense. (*Id.* ¶ 314.)

C.    **Pre-Sale Knowledge**

The FAC also contends that Honda had longstanding knowledge of the Defect and its safety implications.  (*Id.* ¶ 319.)  It alleges that "Honda learned of the Defect at least as early as 2015, and certainly well before Plaintiffs and Class members purchased or leased their Class Vehicles, through sources such as pre-release evaluation and testing; investigations leading to dealer service bulletins; repair data; replacement part sales date; early consumer complaints made directly to Honda, collected by the [National Highway Traffic Safety Administration's ("NHTSA") Consumer Complaint Database], and/or posted on public online vehicle owner forums; testing done in response to those complaints; aggregate data from Honda dealers"; and other internal sources.  (*Id.*)

The FAC essentially alleges that given Honda's emphasis on product quality and its rigorous pre-release testing and analysis, Honda "necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicle's AC Systems," and it therefore knew or should have known that the AC Systems were defective and would prematurely fail well in advance of their expected useful life.  (*See id.* ¶¶ 321-28.)  The FAC also alleges that "Honda knew or should have known about the Defect because of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                          Date: June 21, 2022

Title:  Andre Wong v. American Honda Motor Co., Inc. et al

the large number of requests for AC System repairs and part replacements made during and after the Class Vehicles' warranty periods" as well as the fact that refrigerant and replacement components are, or were, on nationwide backorder.  (*Id.* ¶ 329.)  It contends that Honda tracks and analyzes maintenance performed on Class Vehicles and warranty data submitted by authorized Honda dealers and this information should have given Honda knowledge of the Defect.  (*Id.* ¶¶ 329-32.)  Moreover, the higher-than-expected number of replacement AC System parts would have alerted Honda to AC System issues. (*Id.* ¶¶ 333-37.)  And consumers complained directly to Honda and its authorized dealers about the Defect as well as in Honda Civic-related online forums.  (*Id.* ¶¶ 338-40.)  The FAC states that the content, consistency, and large number of consumer complaints lodged with the NHTSA should have put Honda on notice of the Defect.  (*Id.* ¶¶ 341-45.) Further, Class Member complaints on third-party websites regarding AC System problems should have put Honda on notice of the Defect.  (*Id.* ¶¶ 346-50.)  And the FAC cites a series of Technical Service Bulletins ("TSBs") and dealer communications as evidence that Honda knew about the Defect.  (*Id.* ¶¶ 351-60.)

### D.   Previous Lawsuit

This is not the first suit brought based on this alleged Defect.  This Court previously dismissed an action filed by the same or overlapping groups of plaintiffs in *Elkins v. AHM*, Case No. 19-cv-00818-JLS-KES.  The Court dismissed the action without prejudice because it lacked a ripe claim in light of a TSB issued by Honda announcing a ten-year, unlimited-miles warranty extension on the AC condenser in 2016-2018 Honda Civics and reimbursement for repair costs for individuals who paid to have this part replaced.  *See Elkins v. AHM*, Case No. 19-cv-00818-JLS-KES, Doc. 60, at 1-2.  The present action seeks remedies for the failure of AC Systems beyond, but including, the failure of the AC condenser.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                          Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

## II.    LEGAL STANDARD

When evaluating a motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), the Court must accept as true all allegations of material facts that are in the
complaint and must construe all inferences in the light most favorable to the non-moving
party.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  Dismissal of a complaint for
failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a
claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
570 (2007).  A complaint must (1) "contain sufficient allegations of underlying facts to
give fair notice and to enable the opposing party to defend itself effectively," and (2)
"plausibly suggest an entitlement to relief, such that it is not unfair to require the
opposing party to be subjected to the expense of discovery and continued litigation."
*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Although for the purposes of a
motion to dismiss [the Court] must take all of the factual allegations in the complaint as
true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual
allegation.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at
555).

Claims sounding in fraud must also pass muster under Rule 9(b) of the Federal
Rules of Civil Procedure, which requires that allegations of fraud be made "with
particularity."  *See* Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b)'s higher pleading standard,
plaintiffs bringing claims sounding in fraud must sufficiently allege "'the who, what, when,
when, where, and how' of the misconduct charged[.]"  *Brenner v. Procter & Gamble Co.*,
2016 WL 8192946, at *5 n.5 (C.D. Cal. Oct. 20, 2016) (citing *Vess v. Ciba-Geigy Corp.
USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).  However, "[w]hile the factual circumstances
of the fraud itself must be alleged with particularity, the state of mind—or scienter—of
the defendants may be alleged generally."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 554
(9th Cir. 2007) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir.1994));
Fed. R. Civ. P. 9(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 2:19-cv-10537-JLS-KES                              Date: June 21, 2022

Title: Andre Wong v. American Honda Motor Co., Inc. et al

Finally, the Court may not dismiss a complaint without leave to amend "unless it is clear" that "the complaint could not be saved by any amendment." *Mueller v. Auker*, 700 F.3d 1180, 1191 (9th Cir. 2021).

## III.   DISCUSSION

Defendants argue that the FAC should be dismissed for a multitude of reasons; the Court addresses each in turn.

### A.   Standing to Assert Nationwide Claims

Defendants contend that Plaintiffs' second, third, fourth, fifth, and sixth causes of action for breach of express and implied warranties, negligence, and unjust enrichment under the laws of states in which no named Plaintiff resides or purchased a vehicle must be dismissed because Plaintiffs lack standing to assert such claims. (*See* Mem. at 13; *see also* FAC Counts II, III, IV, V, and VI.)

"[T]he majority of courts . . . have concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *Villanueva v. Am. Honda Motor Co., Inc.*, 2019 WL 8112467, at *14 (C.D. Cal. Oct. 10, 2019) (quotations omitted); *see also Mollicone v. Universal Handicraft, Inc.*, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) ("[C]ourts routinely dismiss claims where no plaintiff is alleged to reside in the state whose laws the class seeks to enforce." (quotation omitted)); *Van Mourik v. Big Heart Pet Brands, Inc.*, 2018 WL 1116715, at *1 (N.D. Cal. Mar. 1, 2018) ("District courts in our circuit have dismissed state law class claims for lack of standing before the class certification stage where no named plaintiff resides in or otherwise interacted with the state."); *but see In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Prods. Liabil. Litig.*, 295 F. Supp. 3d 927, 953-56 (N.D. Cal. 2018) (choosing to defer consideration of the standing issue for "sister state" law claims until after class certification when plaintiffs brought claims under the laws of the fifty states on behalf of putative nationwide class when no named

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                    Date: June 21, 2022

Title:  Andre Wong v. American Honda Motor Co., Inc. et al

plaintiff was alleged to have resided, purchased, or leased a class vehicle in seven states
or the District of Columbia).

      Plaintiffs lack standing to assert claims in states in which no named Plaintiff
resides or has purchased a vehicle.  As held by many of the cases cited by Plaintiffs, once
a named plaintiff establishes standing, any potential differences between the named
plaintiffs and absent class members is properly considered within the class certification
context.  (*See* Opp. at 5-7 (citing cases such as *Melendres v. Arpoaio*, 784 F.3d 1254,
1262 (9th Cir. 2015); *B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir.
2019)).)  The issue here, however, is that the named Plaintiffs have not—and cannot—
establish that they have standing to sue under the laws of states in which no named
Plaintiff resides or purchased a class vehicle.  Thus, while any differences between
named Plaintiffs and absent class members is typically, and appropriately, addressed
within the context of class certification or thereafter, it would put the cart before the horse
to permit Plaintiffs to state claims under the laws of the fifty states and the District of
Columbia without establishing any standing for suit under the laws of thirty-seven of
those states.

      Moreover, while Plaintiffs attempt to contrast this action from the cases cited by
Honda on the ground that they are "outlier cases where plaintiffs pled nationwide classes
despite representing a small number of plaintiffs in just one or a few states," (Opp. at 7),
this misses the point.  The cases cited by Honda are not outliers, but merely some of the
few in which named plaintiffs attempted to bring claims under the laws of the states in
which none of them lived—unlike the bulk of cases cited by Plaintiffs, in which named
plaintiffs brought claims under the laws of the states in which they live on behalf of
absent class members residing in those same states and different states.  *See, e.g., In re
Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 2012 WL 5473736, at *1 (C.D. Cal. Oct.
24, 2012) (asserting claims for nationwide class under the laws of the states in which
named plaintiffs reside or purchased vehicles).  And to the extent the cases cited by
Plaintiffs come out differently on this issue, those cases still recognize that "district
courts retain discretion to address standing before or after class certification in the 'sister

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                          Date: June 21, 2022

Title:  Andre Wong v. American Honda Motor Co., Inc. et al

state' law scenario," and look to "the ratio of states with named Plaintiffs to states without." *In re Chrysler-Dodge-Jeep*, 295 F. Supp. 3d at 956.  The ratio here, however, does not favor deferring resolution of the standing question until after class certification. In contrast to *In re Chrysler-Dodge-Jeep*, where there were no named plaintiffs in only *seven* states and the District of Columbia, here, there are no named plaintiffs in *thirty-six* states and the District of Columbia.  Accordingly, the Court declines to exercise its discretion to defer ruling on this issue.

Thus, the Court holds that Plaintiffs' Second, Third, Fourth, Fifth, and Sixth causes of action for breach of express and implied warranties, negligence, and unjust enrichment brought under the laws of states in which no named Plaintiff resides or purchased a vehicle are DISMISSED without leave to amend.[1]

### B.      Magnuson-Moss Warranty Act Claim

Citing *Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020), Honda argues that Plaintiffs' Magnuson-Moss Warranty Act claim (Count I) is not cognizable as there are fewer than 100 named plaintiffs in this action.  (Mem. at 14.)  The Court agrees, and this claim is DISMISSED without leave to amend.[2]  *See Floyd*, 966 F.3d at 1034 (affirming dismissal of Magnuson-Moss claim for failing to satisfy the statute's specific numerosity requirement, stating "[t]he text is clear that a requirement for an MMWA class action in federal court is at least one hundred named plaintiffs").

---

[1] Per the Court's Scheduling Order, the deadline to File a Motion to Add Parties or Amend the Pleadings has passed.  (*See* Order, Doc. 52.)  Thus, even if there are individuals who could serve as named plaintiffs in this action, the FAC may not be amended to add such plaintiffs.  For the same reason, Plaintiffs' Magnusson-Moss Claim, as discussed below, is dismissed without leave to amend.

[2] The Court is concerned that, despite clear and binding Ninth Circuit law on this issue, Plaintiffs chose to oppose the motion as to the Magnuson-Moss claim by ignoring *Floyd* and citing pre-*Floyd* district court decisions.  Plaintiffs' approach does not inspire the Court's confidence in the reliability of Plaintiffs' papers.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                           Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

> ### C.     Express Warranty Claims

Plaintiffs assert fourteen causes of action for breach of express warranty.  (*See* FAC Counts X, XIV, XVII, XXII, XXIV, XXVII, XXX, XXXIII, XXXVII, XXXIX, XLII, XLVII, XLVIII, and LI.)  Defendants contend that these causes of action should be dismissed because: (1) Plaintiffs' NVLW covers defects only in material or workmanship, and does not cover design defects like those Plaintiffs plead here; (2) even assuming the NVLW applies, Plaintiffs do not allege a breach of the express written warranty that could give rise to a claim; and (3) Plaintiffs have not demonstrated any warranty by representation when AHM advertised the vehicles as "safe and reliable," which is non-actionable puffery.  (Mem. at 15.)

As a threshold issue, in alleging breach of an express warranty, a plaintiff must allege "the exact terms of the warranty" and that their vehicles fall within the warranty's coverage.  *See Kearney v. Hyundai Motor Am.*, 2010 WL 8251077, at *7 (C.D. Cal. Dec. 17, 2010) (internal quotation marks omitted) (Staton, J.).  "The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed."  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). "To prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff."  *McCarthy v. Toyota Motor Corp.*, 2018 WL 6318841, at *7 (C.D. Cal. Sept. 14, 2018) (quoting *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1333 (C.D. Cal. 2013)).[3]

### 1.     Design defect versus defect in materials or workmanship

Honda contends that the NVLW covers only manufacturing defects or workmanship defects—it does not cover design defects—and although the FAC uses

---

[3] The other applicable state laws are similar.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                    Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

"buzz words" like "manufacturing defect," "materials," or "workmanship," it "does not mask that [Plaintiffs] assert a *design defect claim*."  (Mem. at 15-16.)  Although Plaintiffs do not appear to contest that the NVLW does not cover design defects, they counter that the FAC alleges a manufacturing or workmanship defect because "their allegations are premised on defective component parts, including the condenser, compressor, and evaporator."  (Opp. at 10.)

Courts regularly hold that "[a]n express warranty covering 'materials and workmanship' does not include design defects."  *See Johnson v. Nissan v. Nissan North Am., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017); *In re Toyota Motor Corp. Unintended Acceleration, Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1180-81 (C.D. Cal. 2010); *see also Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) ("materials and workmanship language" generally "excludes guarantees against design defects").  Although "[w]here a defect is common to all vehicles, such defect is typically considered one of design, rather than a manufacturing defect," this is not always the case.  *Rollolazo v. BMW of North Am.*, 2017 WL 6888501, at *8 (C.D. Cal. May 2, 2017).  In particular, courts have held that, so long as plaintiffs "plausibly allege[] that [the] vehicles differ from the product the manufacturer intended to sell," a manufacturing defect may exist, even if the allegations suggest that the defect is present in all relevant vehicle models.  *See Johnson*, 272 F. Supp. 3d at 1177-78; *see also Barakezyan v. BMW of North Am.*, LLC, 715 F. App'x 762 (9th Cir. 2018) ("[U]nder California law a manufacturing defect encompasses instances where products differ, even uniformly, from a manufacturer's intended result or design."  (citing cases)).

The FAC alleges that the NVLW covering each Class Vehicle "agreed to repair reported defects within the earlier of 3 years or 36,000 miles," and typically, each warranty provided that, specifically, Honda would "repair or replace any part that is defective in material or workmanship under normal use."  (FAC ¶ 304.)  The FAC alleges that the AC System in Class Vehicles "is prone to develop leaks due to a defect in materials, workmanship and/or design that renders the AC System's components unable to withstand the pressures, forces, and reactions that the AC System encounters . . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                                Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

during normal, expected, and foreseeable usage and conditions." (*Id.* ¶ 6.)  And "[a]lthough the Defect may first manifest as leaks in the Class Vehicles' condensers or compressors, it also causes other vehicle components (such as evaporators and discharge and suction lines) to fail." (*Id.* ¶ 7.)  The FAC also repeatedly cites a TSB issued by Honda stating that "[t]he A/C condenser was not manufactured to specification.  As a result, tiny holes may develop in the condenser tube walls that allows the refrigerant to leak out." (*Id.* ¶ 18.)

In light of these allegations, the Court finds that Plaintiffs have alleged a manufacturing or materials defect covered by the NVLW.  Although the defective AC Systems in Class Vehicles may be the result of a design defect, it is also plausible that the Systems suffer from uniform manufacturing defects such that they differ from Honda's intended product.  "Discovery may show that this defect is one in design," but for now, Plaintiffs' allegations are "sufficient to establish their right to discovery to investigate the potential causes." *Johnson*, 272 F. Supp. 3d at 1178.

### 2.   Breach

Honda contends that "[e]ven *if* the NVLW covered Plaintiffs' defect claims . . . [Honda] honored its warranty obligations during the applicable 3-year, 36,000-mile warranty period for each of the named Plaintiffs." (Mem. at 17 (citing FAC ¶ 304 & Exs. 5-10).)  Accordingly, Honda argues that the FAC does not state a claim for breach of express warranty. (*Id.* at 18.)  Plaintiffs counter that Honda did not cover the Class Vehicles within the NVLW's time and mileage limitations, in part, because the "warranted repairs it did provide did not remedy the Defect." (Opp. at 12.)  Additionally, for Plaintiffs whose vehicles failed outside the warranty window, the NVLW's "durational and mileage limits are unconscionable and unenforceable given Honda's knowledge of the Defect." (*Id.*)

Further, Plaintiffs allege that they "also bring express warranty claims based on Honda's marketing materials and statements communicated through the Vehicles' window stickers, each of which advertised the Class Vehicles' features (such as the price,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                          Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

specifications, gas mileage, equipment, and warranty details and crash test ratings) and
stated that the Class Vehicles were equipped with a functioning AC System covered by
Honda's NVLW." (*Id.* at 13.)  Plaintiffs claim that such statements create an express
warranty breached by the sale of vehicles containing defective AC Systems. (*Id.*)  At the
same time, however, Plaintiffs concede they have not pleaded express warranty by
representation. (*Id.* at 14.)

The Court has reviewed the allegations made with respect to each individual
named Plaintiff and agrees with Honda that nowhere does the FAC allege that Honda
failed to honor its warranty obligations during the applicable warranty period.  The
majority of repairs sought occurred well after a Plaintiff's warranty period had ended.
(*See, e.g.,* FAC ¶¶ 77-84 (Robinson seeking repairs four years after purchase with 53,000
miles on odometer); *id.* ¶¶ 95-110 (Madero seeking repairs three and a half years after
purchase with 58,900 miles on odometer); *see also id.* ¶ 282 ("Because of the Defect, AC
System failure in the Class Vehicles occurs at relatively low mileage, *often just outside
the warranty period*[.]" (emphasis added)).)  Thus, Honda had no obligation to pay the
cost of these repairs pursuant to its express warranty.  Additionally, for vehicles
presented for repair during the warranty period, the FAC allegations reflect that Honda
honored its obligations.  (*See, e.g., id.* ¶¶ 51-61 (alleging Heier's AC System repaired
under warranty when it failed two years into warranty with 17,750 miles on the
odometer).)  There is no allegation that diagnostic fees or damage caused by road debris
was explicitly covered by the NVLW, and thus, Honda's failure to cover such costs is not
an apparent breach of the express warranty.  And, as Honda acknowledges, although
Plaintiff Hu potentially presents an in-warranty claim for which Honda did not cover
repair costs, the FAC fails to include sufficient facts, such as the precise date of purchase
and date of presentment for repair, such that the Court can find that Hu states a claim.
(*See* Mem. at 18; FAC ¶¶ 62-69.)

Moreover, Plaintiffs cite no case law to support their argument that multiple
repairs, several of which post-date warranty expiration, can establish a breach of express
warranty, and the Court finds there is none.  There may be instances in which "[a] limited

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                          Date: June 21, 2022

Title:  Andre Wong v. American Honda Motor Co., Inc. et al

warranty fails of its essential purpose" if "after multiple attempts, the warrantor fails to repair the defects in a reasonable timeframe." *Snyder v. Tamko Bldg. Prods.*, 2019 WL 4747950, at *4 (E.D. Cal. Sept. 30, 2019). Plainly, this is not the case here; the FAC alleges that only a few named Plaintiffs' vehicles were repaired during the warranty period at all, and it does not allege that those vehicles were repaired multiple times under warranty. (*See, e.g.,* FAC ¶¶ 51-61 (repaired only once under warranty and once under TSB); *id.* ¶¶ 226-41 (repaired only once under warranty).)

Nor is there case law to support Plaintiffs' assertion that, under the present circumstances, the durational or mileage limits are unconscionable or unenforceable. The only case cited by Plaintiffs to support this argument is *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *9-*10 (S.D.N.Y. Dec. 16, 2011), which specifically relied on the defendants' knowledge of the defect in holding that the durational limit was unconscionable, and the express warranty was unenforceable. Although Plaintiffs contend that Honda's pre-sale knowledge of the Defect renders the NVLW's durational and mileage limits unconscionable, as discussed in detail below, even if the Court were to accept the premise that knowledge of a defect can support an unconscionability argument, Plaintiffs have not adequately alleged that Defendants had pre-sale knowledge of the Defect. (Opp. at 15.) Thus, Plaintiffs have not sufficiently alleged a breach of express warranty based on the unconscionability of the durational or mileage limits.

**3.  Warranty by representation**

The Court is also unconvinced by Plaintiffs' argument that Honda has breached an express warranty deriving from Honda's marketing materials and window stickers. Plaintiffs' arguments lack specificity, and the Court finds that the window stickers representing that the vehicles came with an AC System covered by the NVLW adds no additional substance to Plaintiffs' express warranty claims. And to the extent that these representations add anything to the NVLW, the Court agrees with Honda that such statements are general, vague, and mere puffery, and are therefore, not actionable. *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1043 (9th Cir. 2010)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                    Date: June 21, 2022

Title:  Andre Wong v. American Honda Motor Co., Inc. et al

(affirming dismissal of fraud claims based on mere commercial puffery); *Edmunson v. P&G*, 2011 WL 1897625, at *3 (S.D. Cal. May 17, 2011) (dismissing UCL and CLRA claims because representations were mere puffery) (citing cases).

Accordingly, the Court DISMISSES Plaintiffs' breach of express warranty claims with leave to amend.

### D.    Breach of Implied Warranty Claims

Honda also moves to dismiss Plaintiffs' fifteen breach of implied warranty of merchantability claims.  (Mem. at 22 (citing Counts XI, XIII, XV, XVIII, XXIII, XXV, XXVIII, XXXI, XXXIV, XXXVIII, XL, XLIII, XLVI, XLIX, and LII).)  Honda argues that these claims should be dismissed because Plaintiffs are not in privity with Honda, Plaintiffs have not pleaded facts to demonstrate that their cars are not merchantable, and the duration of the implied warranty is co-extensive with the duration of the express warranty, which has already lapsed.  (*Id.* at 22-23.)  Plaintiffs counter that Indiana, Michigan, Missouri, New Jersey, Pennsylvania, Texas, and Virginia law do not require a buyer to establish privity, that in the remaining states, there is a third-party beneficiary exception to the requirement, Plaintiffs have alleged unmerchantability, and Plaintiffs need not demonstrate that the defect manifested within the warranty period.  (Opp. at 17-22.)

The Court addresses only one of the Parties' arguments: whether Plaintiffs have alleged that the Class Vehicles are not merchantable.  Each of the statutes Plaintiffs invoke is modeled after the Uniform Commercial Code.  "The Commercial Code does not 'impose a general requirement that the goods precisely fulfill the expectation of the buyer.  Instead, it provides for a minimum level of quality.'"  *Sandoval v. Mercedes-Benz USA, Inc.*, 2013 U.S. Dist. LEXIS 188997, at *15 (C.D. Cal. Sept. 24, 2013) (quoting *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (1975)).  "A plaintiff who claims a breach of the implied warranty of merchantability must show that the product 'did not possess even the most basic degree of fitness for ordinary use.'"  *Id.* (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).  "As respects vehicles, therefore, the implied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                                    Date: June 21, 2022

Title:  Andre Wong v. American Honda Motor Co., Inc. et al

warranty of merchantability requires only that a vehicle be reasonably suited for ordinary use," and it "need not be perfect in every detail so long as it provides for a minimum level of quality." *Id.* (quotations omitted).  "The basic inquiry, therefore, is whether the vehicle was fit for driving." *Id.*  Although, to be sure, California courts, at least, "reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability," and a vehicle that "smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." *Id.* (citing *Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (2007)).

In line with this formulation, courts in this district have held that issues with a vehicle's air conditioning often cannot sustain a plaintiff's claim for breach of the implied warranty of merchantability.  For instance, in *Nafisi v. Mercedes-Benz USA, LLC*, 2021 WL 2525583, at *1, *5 (C.D. Cal. May 14, 2021), the court held that a "bad smell coming from the air conditioning" that could not be repaired after a number of attempts "did not prevent Plaintiff from using the vehicle, [and] did not cause safety concerns," and the "vehicle was fit for its intended purpose." *Id.* at *5-*6.  However, courts have also held that the implied warranty may be violated where a defect with the air conditioning system causes a serious health or safety risk.  *See Salas v. Toyota Motor Sales, U.S.A., Inc.*, 2016 WL 7486600, at *1, *11-*12 (C.D. Cal. Sept. 27, 2016) (holding that plaintiffs' allegation of a defect in the Heating, Ventilation, and Air Conditioning ("HVAC") system that caused the emission of "noxious and foul odors from debris and contamination in the HVAC system as well as possible growth of mold," which allegedly, was hazardous to health and could lead to illness, was sufficient to state a claim for breach of implied warranty); *but see In re Gen. Motors Air Conditioning Marketing and Sales Practices Litig.*, 406 F. Supp. 3d 618 (E.D. Mich. Sept. 5, 2019) (holding lack of functioning air conditioning creates a safety risk by inhibiting ability to de-fog windshields and windows).

Here, the Court finds that the Defect alleged—that Plaintiffs' vehicles may need AC System repairs for failure to cool after several years of driving—does not pose an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                     Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

unreasonable health or safety risk to the driver or passengers, and thus, the Class Vehicles are fit for driving and satisfy a minimum level of quality.  Although Plaintiffs attempt to couch this as a safety concern, the Court is not convinced that Plaintiffs' allegations that the Defect "causes uncomfortably hot temperatures within [the] vehicles," and prevents drivers from "defogging their windshields using the AC System, decreasing visibility and increasing the risk of accident," are sufficient to allege an unreasonable safety risk.  Instead, the Court finds the Defect is better understood as a failure to affirmatively eliminate safety risks posed by the environment.  This stands in contrast to cases in which vehicles were actively emitting noxious and harmful smells.  Moreover, if the failure to have an operational AC System for the purpose of defogging windows was in fact a safety hazard, it is difficult to explain why some automobiles do not come equipped with AC.  Thus, the Court concludes the alleged Defect does not support that the Class Vehicles are unmerchantable.

In light of this holding, the Court declines to reach the remaining issues addressed by the Motion, and DISMISSES the implied warranty of merchantability claims without leave to amend.

### E.      Fraud and Consumer Protection Claims

Honda also moves to dismiss Plaintiffs' fraud and consumer protection claims.  (Mem. at 27.)  Honda argues: (1) the FAC contains no allegations to establish pre-sale knowledge of the Defect; (2) Honda owed no duty to disclose because there is no safety issue with the AC Systems or one that goes to the vehicles' central function; (3) Plaintiffs fail to plead an actionable misrepresentation or omission under Rule 9(b); and (4) Plaintiffs' fraudulent concealment claim fails because Plaintiffs plead no facts to show active concealment.  (*See id.* at 27-32.)  Plaintiffs attempt to counter each of these points.  (Opp. at 23-30.)

Plaintiffs' fraud and consumer protection claims hinge on Honda's knowledge of the Defect before it sold the vehicles to Plaintiffs.  Plaintiffs contend the gravamen of the complaint is "predicated on Honda's *omissions*, not affirmative misrepresentations,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                    Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

(Opp. at 28); a duty to disclose an omitted fact arises only if Honda knew that fact at the time of sale.  *See Wilson v. Hewlitt-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Knowledge also forms an essential element of any fraud claim.  For instance, "[t]he elements of fraud in California are: '(1) a misrepresentation (false representation, concealment, or nondisclosure); (2*) knowledge of falsity (or scienter)*; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'" *Avedisian v. Mercedes-Benz USA, LLC*, 2013 WL 2285237, at \*8 (C.D. Cal. May 22, 2013) (citing *Robinson Helicopter Co. v. Dana Corp*., 34 Cal. 4th 979, 990 (2004)) (emphasis added).[4]  "[W]hile circumstances constituting fraud must be alleged with particularity, knowledge may be alleged generally."  *McCarthy v. Toyota Motor Corp.*, 2019 WL 3220579, at \*4 (C.D. Cal. Apr. 9, 2019) (quoting *Parenteau v. Gen. Motors, LLC*, 2015 WL 1020499, at \*6 (C.D. Cal. Mar. 5, 2015)).

Plaintiffs' allegations are too vague and minimal to pass muster, even under a *Twombly/Iqbal* standard.  Although Plaintiffs accuse Honda of challenging the sufficiency of each individual source of knowledge without considering the "*collective* import" of Plaintiffs' allegations, the Court finds that even when considered collectively, Plaintiffs' allegations fall short of plausibly alleging pre-sale knowledge.  (*See* Opp. at 24.)

For instance, the FAC and Plaintiffs' Opposition contend that Honda should have known about the Defect through pre-release design, manufacture, engineering, and testing data.  (FAC ¶¶ 327-28.)  However, in support of this allegation, Plaintiffs allege merely that Honda subjects its new and redesigned models to rigorous long-distance testing before mass production; accordingly, Honda "knew or should have know that the AC Systems suffered from" the Defect.  (*Id.* ¶ 328.)  "In cases where the plaintiffs fail to allege how 'pre-release testing data' or 'aggregate data' could have alerted the

_____

[4] The standard for fraud under other applicable state laws is similar in relevant respects to California law for purposes of this analysis.  *See Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338-39 (5th Cir. 2008) ("[S]tate-law fraud claims are subject to the pleading requirements of Rule 9(b).").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                              Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

manufacturer to the alleged defect, courts have treated generalized allegations regarding the existence of such testing or information as insufficient to establish knowledge." *Hardt v. Chrysler Grp. LLC*, 2015 WL 12683963, at *4 (C.D. Cal. Mar. 16, 2015).  Thus, the mere fact that Honda typically conducts testing is insufficient to plausibly allege it had pre-sale knowledge of the Defect.

Moreover, Plaintiffs contend that repair data supports their allegation of pre-sale knowledge.  (*See* FAC ¶¶ 329-32.)  But the very nature of repair data undercuts that it supports pre-sale knowledge; repair data is typically obtained after vehicles have been sold.  And the allegations of the FAC are extremely vague and do little to support that Honda had knowledge of the Defect before Plaintiffs purchased their vehicles.  (*See id.*)  The same goes for the Plaintiffs' allegations regarding the large number of replacement AC System Parts ordered by Honda.  (*Id.* ¶¶ 333-37; *see, e.g., id.* ¶ 335 ("[T]he three most critical AC System components—the condenser, compressor, and evaporator—have all been backordered at various times[.]").)  Plaintiffs' allegations do little to support that Honda had knowledge of the Defect prior to selling Plaintiffs' vehicles.

Plaintiffs' citation to class member complaints is slightly more compelling.  (*See id.* ¶¶ 338-40.)  These complaints do, at least, indicate that some Honda purchasers were experiencing issues with their AC Systems.  Although the Court recognizes that Plaintiffs only purport to offer a sampling of these complaints, they have provided only nine complaints, and further, these complaints were made on "Honda-Civic-related online forums."  (*Id.* ¶ 339.)  A handful of complaints on a third-party website made over the course of three years simply is not sufficient to allege pre-sale knowledge given the sheer volume of Honda Civics sold in the United States.

The same goes for complaints lodged with the NHTSA.  "Federal law requires automakers like Honda to be in close contact with NHTSA regarding potential auto defect," (*id.* ¶ 342), and so NHTSA complaints may be much more compelling evidence that Honda had notice of the Defect.  The Ninth Circuit has held, however, that consumer complaints suffice to establish knowledge only where there were an unusual number of complaints, such that the manufacturer would be on notice of a specific problem.  *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                          Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027 (9th Cir. 2017).  The FAC alleges
that "[f]rom September 2, 2016, through November 26, 2019, 57 consumer complaints
were submitted to NHTSA describing the Defect in Honda Civic Vehicles, alone, in
many cases on repeated occasions."  (FAC ¶ 345).  In light of the number of vehicles sold
by Honda, this number is insufficient to constitute an unusual number of complaints that
would have put Honda on notice.  *See Deras v. Volkswagen Grp. of Am., Inc.*, 2019 WL
935130, at *3 (N.D. Cal. Feb. 26, 2019) (finding plaintiffs' assertion "speculative" that
57 NHTSA complaints represented "an unusually high number of complaints sufficient to
alert VW of the defect" relative to the potentially hundreds of thousands or more class
vehicles).  And further, the majority of the complaints incorporated into the FAC were
filed in 2019—well after the named Plaintiffs purchased their vehicles.  (*See* FAC ¶ 345.)
Thus, even fewer complaints would have been available to Honda prior to sale.

Additionally, the Court is not persuaded that the TSBs cited by the FAC are
sufficient to establish pre-sale knowledge.  Although Plaintiffs' Opposition highlights the
timing of the first TSB issued by Honda, which was issued in 2016—close in time to the
purchase of Plaintiffs' vehicles, (*see* Opp. at 24)—the Opposition skims over the content
of that TSB.[5]  The TSB states that Honda was "getting reports of the A/C not blowing
cold air."  (*See* 2016 TSB, available at chrome-
extension://efaidnbmnnnibpcajpcglclefindmkaj/https://static.nhtsa.gov/odi/tsbs/2016/MC-
10084408-2280.pdf).  It also indicated, however, that the cause of the problem was likely
the result of "the low pressure suction hose . . . rubbing against the bracket for the
expansion tank," which was the result of "a variation in the hose profile."  (*Id.*)

---

[5] The Court notes that while many of the other relevant TSBs were filed as exhibits to the
FAC itself, this TSB, notably, was not.  Instead, the link is merely provided in a footnote.  The
Court may consider this TSB under the incorporation by reference doctrine.  *See Grant v. Aurora
Loan Servs., Inc.*, 736 F. Supp. 2d 1257, 1264 n.37 (C.D. Cal. 2010) (incorporation by reference
doctrine permits a court deciding a Rule 12(b)(6) motion to consider documents incorporated by
reference, but not physically attached to the complaint if they are central to plaintiff's claim and
no party questions their authenticity).

---

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                                Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

Additionally, the TSB specified that, "[f]ortunately, *there's just a very small quantity of those hoses in the market*, but if you happen to get a vehicle with this issue, then replace the hose and make sure the new one doesn't make contact with the bracket or surrounding hose clamps."  (*Id.* (emphasis added).)  The Court finds that this TSB offers little support for the proposition that Honda knew of the Defect in 2016; indeed, it suggests Honda had little to no conception of the broad, design defect alleged here, as evidenced by Honda's statement that any issues affected relatively few vehicles.  The other TSBs were issued in 2019 and 2021—after named Plaintiffs had each purchased their vehicles.  (*See* Ex. 1 to FAC, Doc. 44-1; Ex. 3 to FAC, Doc. 44-3.)  They too, thus, provide little to no support for pre-sale knowledge.

The FAC also attaches as exhibits a number of Dealership Communications issued in 2017.  These communications each state that Honda "is investigating certain 2017 Civics with a customer complaint of the A/C not working or not cooling enough," and asks that Honda be able "to inspect the vehicle prior to [the dealer] attempting a repair of any kind."  (*See* Exs. 11-16, Docs. 44-11—44-16.)  While these communications suggest Honda had some idea that there was an AC System issue in 2017, they also suggest Honda was in the early stages of investigating that issue; they do not plausibly allege that Honda understood the gravity and scope of the defect alleged, or even that there was a defect.  Moreover, while these communications were each issued in the late-spring and early-summer of 2017, the bulk of named Plaintiffs purchased their vehicles in 2016; thus, these communications do little to establish pre-sale knowledge for those Plaintiffs who purchased their vehicles prior to the issuance of the dealer communications.

In sum, the Court finds the FAC's allegations, even when viewed in totality, to be too weak to plausibly allege pre-sale knowledge.  Accordingly, the Court DISMISSES Plaintiffs' fraud and consumer protection claims with leave to amend.

### F.    Negligence Claim

Honda argues that Plaintiffs' negligence claim (Count V) is barred by the Economic Loss Rule.  (Mem. at 33.)  The Economic Loss Rule bars claims in negligence

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                          Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

seeking "damages for inadequate value, cost of repair and replacement of the defective product or consequent loss of profits—without any claim of personal injury or damages to . . . property [other than the product itself]."  (*Id.* at 33 (quoting *Fisher v. Honda N. Am.*, 2014 U.S. Dist. LEXIS 84570, at *17 (C.D. Cal. June 12, 2014)).)  Honda alleges that because Plaintiffs are suing only for disappointed product expectations, and do not allege personal injury or damage, their claim is barred and must be dismissed.  (*Id.*)  Plaintiffs counter only that the Economic Loss Rule does not apply to negligent misrepresentations and omissions because such claims sound in fraud, and therefore, a recognized exception to the Rule applies.  (*See* Opp. at 32-33.)

The Court agrees with Honda that this claim must be dismissed.  Count V of the FAC asserts a claim for negligence, citing Honda's "fail[ure] to ensure that the condensers used in the Class Vehicles were free from the Defect," and Honda's "fail[ure] to warn Plaintiffs and Class members that the condensers used in Class Vehicles were not free from the Defect or the safety hazards caused by it."  (FAC ¶ 493.)  As to causation, however, the FAC states only that "[a]s a direct and proximate result of Honda's negligence, Class Vehicles' AC Systems are prone to fail when the Class Vehicles are operated in reasonable, usual and ordinary driving conditions, leading to AC System failure," and therefore, "Plaintiffs and Class members have suffered damages."  (*Id.* ¶¶ 494-95.)  The Court finds that the gravamen of this claim has nothing to do with negligent misrepresentation, and instead, focuses on Defendants' simple negligence with respect to the design and manufacture of the Class Vehicles themselves.  Only a stray sentence mentions Defendants' failure to warn Plaintiffs.  The Economic Loss Rule bars recovery on simple negligence claims, and Plaintiffs do not argue to the contrary.  *See Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 6549931, at *11 (C.D. Cal. Aug. 21, 2017) ("[T]he alleged damage to Plaintiffs' vehicles are barred by the economic loss rule, as Plaintiffs do not allege damage to something other than the product itself (*i.e.,* the vehicle).").  Accordingly, as this claim is barred as a matter of law, this claim is DISMISSED without leave to amend.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                    Date: June 21, 2022

Title:  Andre Wong v. American Honda Motor Co., Inc. et al

### G.    Unjust Enrichment Claims

Honda contends that Plaintiffs' unjust enrichment claim (Count VI) must be
dismissed because an unjust enrichment claim cannot stand under the state laws Plaintiffs
invoke where they have an adequate remedy at law.  (Mem. at 34.)  Plaintiffs counter
that, under Federal Rule of Civil Procedure 8(a)(3), they may plead an unjust enrichment
claim in the alternative to their other claims, and accordingly, at the pleading stage, they
may assert their unjust enrichment claims now even if an adequate remedy at law exists.
(Opp. at 31.)  Honda rebuts Plaintiffs' argument by arguing that the FAC does not plead
an unjust enrichment claim in the alternative; instead, the FAC incorporated all preceding
paragraphs, including the legal claims in Counts I through V, and Plaintiffs do not allege
they lack an adequate legal remedy.  (Reply at 23.)

Although the Court agrees with Plaintiffs that merely seeking legal remedies in the
complaint does not preclude Plaintiffs from also seeking equitable remedies, such as
restitution for unjust enrichment, at the pleading stage, the Court agrees with Honda that
this claim should be dismissed.  "[U]njust enrichment is a theory that permits recovery on
other recognized causes of action[.]"  *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090,
1114 (C.D. Cal. 2012).  As the Court has dismissed the other causes of action in the FAC,
there is no grounds for recovery on an unjust enrichment theory.  Accordingly, this claim
is DISMISSED with leave to amend.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS the Motion.  The Court ORDERS
as follows:

- Claims II, III, IV, V, and VI, as asserted under the laws of states in which
  no named Plaintiff resides or purchased a vehicle are dismissed without
  leave to amend.
- Claim I under the Magnuson Moss Act is dismissed without leave to

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  2:19-cv-10537-JLS-KES                    Date: June 21, 2022
Title:  Andre Wong v. American Honda Motor Co., Inc. et al

amend.

- Claims X, XIV, XVII, XXII, XXIV, XXVII, XXX, XXXIII, XXXVII, XXXIX, XLII, XLVII, XLVIII, and LI for breach of express warranty are dismissed with leave to amend.
- Claims XI, XIII, XV, XVIII, XXIII, XXV, XXVIII, XXXI, XXXIV, XXXVIII, XL, XLIII, XLVI, XLIX, and LII for breach of implied warranty are dismissed without leave to amend.
- Claims VII, VIII, IX, XII, XVI, XIX, XX, XXI, XXVI, XXIX, XXXII, XXXV, XXXVI, XLI, XLIV, XLV, and L for fraud and breaches of consumer protection laws are dismissed with leave to amend.
- Claim V for negligence is dismissed without leave to amend.
- Claim VI for unjust enrichment is dismissed with leave to amend.

Plaintiff is GRANTED LEAVE TO AMEND the pleading.  Plaintiff may not add claims or new defendants to their pleading.  Any amended complaint shall be filed within **twenty-one (21) days** of the date of this Order.  Failure to timely file an amended complaint will result in the dismissal of this action and closing of the case without further notice.

Initials of Deputy Clerk: droj